IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRISPORT, LTD, <br><br>  Plaintiff, <br><br> v. <br><br> GREENKEEPERS OF DELAWARE, LLC and GREENKEEPERS, INC., <br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )  C.A. No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Trisport, Ltd. ("Trisport") for its Complaint against Defendants Greenkeepers of Delaware, LLC and Greenkeepers, Inc. (collectively "Defendants") alleges as follows:

### NATURE OF THE ACTION

1. This is an action for infringement of United States Patent No. 6,810,608 ("the '608 patent"). This action is based on the Patent Laws of the United States, 35 U.S.C § 100 *et seq*.

### THE PARTIES

2. Trisport is a corporation organized under the laws of the United Kingdom having its principal place of business at 38 Amber Close, Tamworth Business Park, Amington, Tamworth, Staffordshire, B77 4RP, UK.

3. On information and belief, defendant Greenkeepers of Delaware, LLC is a limited liability company organized under the laws of the State of Delaware having its principal place of business at 103 Foulk Road, Suite 202, Wilmington, Delaware 19803.

4. On information and belief, defendant Greenkeepers, Inc. is a corporation organized under the laws of the Commonwealth of Pennsylvania having its principal place of business at 1836 Stout Drive, Unit 16, Warminster, PA 18974.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Greenkeepers of Delaware LLC, because Greenkeepers of Delaware, LLC is a Delaware company, and has had continuous and systematic contacts with this judicial district.

7. This Court has personal jurisdiction over Greenkeepers, Inc., because, on information and belief, Greenkeepers, Inc. has had continuous and systematic contacts within this judicial district, has sold or offered to sell infringing products within Delaware, has affiliated itself with a Delaware company, and has shipped or transferred title to its products within Delaware.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

## BACKGROUND

9. On November 2, 2004, the '608 patent, entitled "Shoe Cleats," was duly and legally issued to Trisport Ltd., as assignee. A true and correct copy of the '608 patent is attached hereto as Exhibit A. Plaintiff owns all right, title and interest to the '608 patent, including the right to sue for infringement thereof.

## FIRST CLAIM FOR RELIEF
## INFRINGEMENT OF THE '608 PATENT

10. Plaintiff incorporates by reference paragraphs 1 through 9.

11. On information and belief, Defendants have been and are infringing the '608 patent by making, using, offering for sale, or selling infringing golf shoe cleats.

12. On information and belief, Defendants also have been and are contributorily infringing and/or actively inducing others to infringe the '608 patent.

13. On information and belief, Defendants were aware of the existence of the '608 patent and their infringement of the '608 patent has been intentional, deliberate, and willful. This is an exceptional case.

14. On information and belief, Defendants will continue to infringe, contributorily infringe, and/or actively induce others to infringe the '608 patent unless and until they are enjoined by this Court.

15. Defendants' infringing activities will irreparably harm Plaintiff unless enjoined by this Court. Plaintiff does not have an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Trisport respectfully requests the following relief:

A. A judgment that Defendants have infringed the '608 patent;

B. A permanent injunction, enjoining Defendants, their officers, agents, servants, employees, and attorneys and other persons who are in active concert or participation with them from infringing the '608 patent;

C. An order awarding damages in an amount sufficient to compensate Trisport for Defendants' infringement of the '608 patent, but not less than a reasonable royalty;

D. An order awarding prejudgment interest to Trisport pursuant to 35 U.S.C. §284;

E. An order awarding increased damages, pursuant to 35 U.S.C. §284;

F.  A declaration that this case is exceptional pursuant to 35 U.S.C. § 285 and an award of attorneys' fees and costs; and

G.  Such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Trisport hereby demands a jury trial on all issues triable of right by a jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Maryellen Noreika

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Paul Saindon (#5110)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
mnoreika@mnat.com
*Attorneys for Trisport, Ltd.*

July 29, 2008

EXHIBIT A



US006810608B2

(12) **United States Patent**
**Kelly**

(10) **Patent No.: US 6,810,608 B2**
(45) **Date of Patent: Nov. 2, 2004**

(54) **SHOE CLEATS**

(75) Inventor: **Paul Andrew Kelly**, Atherstone (GB)

(73) Assignee: **Trisport Limited**, Staffordshire (GB)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 635 days.

(21) Appl. No.: **09/909,168**

(22) Filed: **Jul. 16, 2001**

(65) **Prior Publication Data**

US 2001/0047598 A1 Dec. 6, 2001

**Related U.S. Application Data**

(60) Continuation of application No. 09/419,591, filed on Oct. 18, 1999, now Pat. No. 6,272,774, which is a division of application No. 09/138,110, filed on Aug. 21, 1998, now Pat. No. 5,974,700.

(60) Provisional application No. 60/057,967, filed on Sep. 5, 1997.

(30) **Foreign Application Priority Data**

Aug. 21, 1997 (GB) ............................................ 9717618
Jul. 7, 1998 (GB) ............................................ 9814586

(51) **Int. Cl.**[7] ............................................ **A43C 15/02**
(52) **U.S. Cl.** ........................................ **36/134**; 36/67 D
(58) **Field of Search** ................................ 36/134, 67 D, 36/59 R

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,223,794 A | | 12/1940 | Pierce et al. |
| 2,624,128 A | | 1/1953 | Phillips |
| 4,205,466 A | | 6/1980 | Collins |
| 4,587,748 A | | 5/1986 | Collins |
| 5,027,532 A | | 7/1991 | MacNeill et al. |
| 5,036,606 A | | 8/1991 | Erich et al. |
| 5,123,184 A | | 6/1992 | Ferreira |
| 5,321,901 A | | 6/1994 | Kelly |
| D388,949 S | | 1/1998 | Savoie |
| D391,048 S | | 2/1998 | Savoie |
| 5,768,809 A | | 6/1998 | Savoie |
| D408,978 S | | 5/1999 | Savoie |
| D410,139 S | | 5/1999 | Savoie |
| 5,974,700 A | | 11/1999 | Kelly |
| 6,108,944 A | | 8/2000 | Savoie |
| 6,151,805 A | | 11/2000 | Savoie |
| 6,272,774 B1 | * | 8/2001 | Kelly |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 196 32 537 A1 | 3/1997 |
| EP | 2 028 102 A | 3/1980 |
| EP | 0 342 232 A1 | 11/1989 |
| GB | 2 238 098 A | 5/1991 |
| WO | WO 91/0318 | 3/1991 |
| WO | WO 91/04685 | 4/1991 |
| WO | WO 91/15131 | 10/1991 |

* cited by examiner

*Primary Examiner*—Ted Kavanaugh
(74) *Attorney, Agent, or Firm*—Edell, Shapiro & Finnan, LLC

(57) **ABSTRACT**

In a combination of shoe cleat and holder, a screw-threaded spigot (**12**) on the cleat is inserted with rotation into a complementary socket (**18**) of the holder, and has a ring of free-standing posts (**34, 42**) extending axially from the cleat and a ring of radially-projective teeth (**26**) on the holder, the rings being co-axial with the screw axis so that during at least later stages of insertion of the spigot (**12**) into the socket (**18**), on relative rotation of the rings, engagement of the teeth (**26**) with the posts (**34, 42**) causes the posts (**34, 42**) to deflect resiliently and engagement of the teeth (**26**) between the posts (**34, 42**) causes interengagement of the locking means.

**17 Claims, 3 Drawing Sheets**

12
36
28
32
38
34
10
14

U.S. Patent    Nov. 2, 2004    Sheet 1 of 3    US 6,810,608 B2



U.S. Patent

Nov. 2, 2004

Sheet 2 of 3

US 6,810,608 B2



Fig. 4



Fig. 3

U.S. Patent   Nov. 2, 2004   Sheet 3 of 3   US 6,810,608 B2



Fig. 5

US 6,810,608 B2

1

# SHOE CLEATS

## CROSS REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 09/419,591 filed Oct. 18, 1999 (now U.S. Pat. No. 6,272,774) which is a divisional of U.S. patent application Ser. No. 09/138,110, filed Aug. 21, 1998 (now U.S. Pat. No. 5,974,700) and which claims priority of U.S. Provisional Application Ser. No. 60/057,967, filed Sep. 5, 1997, British Patent Application No. 9717618.4, filed Aug. 21, 1997, and British Patent Application No. 9814586.5, filed Jul. 7, 1998.

This invention is concerned with improvements in or relating to the securement of shoe cleats in shoe soles and heels.

It is well known for cleats to be secured, for example in the soles of golf shoes, by means of a screw-threaded spigot on the cleat which becomes engaged in a correspondingly threaded socket in the shoe sole. The socket is ordinarily provided by a separately formed receptacle which may be incorporated into a moulded sole, or may be secured within a composite sole structure comprising leather, EVA or other sheet material forming an outsole. Usually the cleats can be unscrewed for replacement when they become excessively worn or damaged.

Cleats secured in this manner may have a ground-piercing stud or spike (as described, for example, in GB-A-2 028 102) or other forms of ground-gripping elements (as described, for example, in EP-A-0 342 232) projecting from an underside of a disc-like flange body; the spigot projects from an upper side of the flange body.

Most known forms of screw-threaded cleat utilise a single start thread rather than a multi-start thread. In addition to being the simplest thread form, a single start thread provides the advantage over a multi-start thread of offering greater resistance to unscrewing after the cleat has been inserted tightly into the socket. However, with both manual insertion and automatic factory assembly in mind there are advantages to be gained from using multi-start threads. In particular, the steeper helix angle of a multi-start thread enables a spigot of any given length to be inserted into the socket with less rotation and, therefore, faster. Furthermore, a multi-start thread reduces the amount of rotation required on average to engage the thread when starting from a random orientation. Also, because a multi-start thread is deeper cut than a single start thread, the shear strength of the threads can be greater. A shorter spigot length is therefore possible.

There is a trend towards using ground-gripping elements of softer plastic materials. The durability of these cleats is considerably less. Therefore the golfer will need to replace cleats more frequently. Also, it is becoming common for golfers to have different sets of cleats for different conditions, so that cleats are changed as a result of assessing course conditions before play. When a single start thread system is used, cleat replacement can be a lengthy and laborious task, since the cleats require multiple turns for their removal and insertion. Since this is very often a manual operation many golfers are discouraged from replacing their cleats as often as they should.

Bayonet-type cleat fixings have been proposed as a way of overcoming the laboriousness of multiple-turn insertion and removal necessitated by conventional single-start screw thread fixings; by means of a bayonet-type coupling, connection or disconnection of the cleat from its holder can be

2

achieved with only a very small rotation. However, in practice such quick-connect couplings have not been found to be entirely satisfactory. First, loadings acting to wrench the cleat from its holder in use can be very large. Whereas a screw-threaded coupling provides a relatively large and well-distributed area of load-bearing contact between the components, a bayonet-type coupling relies upon a very few points of contact which must carry all the load, and severe damage (e.g. involving shearing of the bayonet pins) can occur. Should such damage occur, removal of a damaged cleat may be difficult in cases where the failure has not been total and the cleat lost. Secondly, whilst the cleat may be designed to slide readily into and out of its holder, in practice its passage can become impaired, whether through distortion of the components or through the ingress of dirt, and operation of the system hampered.

For these various reasons, the use of a multi-start thread can be attractive. One example of use of a multi-start thread form is described in WO 91/04685, being in that case a two-start thread.

In order to ensure that a cleat does not become accidentally unscrewed (whether utilising a single start or multi-start thread) many forms of locking ratchet have been proposed. Many of these come into play only at the very end of insertion of the spigot into the socket. For example, a commonly proposed arrangement utilises interengageable sets of teeth in opposing annular arrays on surfaces perpendicular to the screw axis. Such an arrangement allows little latitude for variation in the depth of interengagement of the teeth, and correspondingly little latitude for variation of the depth of insertion of the spigot into the socket if the locking ratchet is to be properly engaged. Such variation can be important if the socket is provided in a composite shoe sole, since it is commonly not possible to guarantee during manufacture an exact level for the outer surface of the outsole relative to the socket.

Another form of locking ratchet, which can overcome that difficulty, is described in U.S. Pat. No. 5,036,606. In that construction, a ring of radially-projecting teeth on one component is disposed to engage with axially-extending splines arranged about a ring of the other component, the teeth riding over the splines (into spaces between the splines) as the two components are relatively rotated in insertion of the spigot into the socket. The axial extent of the splines provides for full co-operation of the teeth with the splines over a range of depths of insertion of the spigot into the socket. However, we have found that in this arrangement the teeth and/or the splines can become severely worn and the system becomes ineffective after several insertions and removals.

It is one of the objects of the present invention to provide an improved shoe cleat and holder combination which enables effective locking to be achieved over a range of depths of insertion of the spigot into the socket.

According to a first aspect of the invention, we provide a shoe cleat and holder combination in which a screw-threaded spigot of one of the two components is arranged to be inserted with rotation into a screw-threaded socket of the other component to secure the two components together and in which locking means of the components is arranged to become interengaged during insertion of the spigot into the socket in order to resist subsequent unscrewing of the spigot assembly, the locking means comprising a ring of posts extending axially from one of the components and a ring of radially projecting teeth on the other component, the rings being co-axial with the screw axis, and during at least later

US 6,810,608 B2

3

stages of insertion of the spigot into the socket, on relative rotation of the rings, engagement of the teeth with the posts causes the posts to deflect resiliently and engagement of the teeth between the posts minimising the wear.

The axial extent of the posts ensure that locking can be achieved over a range of depth of insertion, while the posts and teeth together form an effective locking means, with the resilience of the posts minimising the wear.

The number of teeth may be an integer multiple of the number of posts. The integer may be one, so that the number of teeth is the same as the number of posts.

As would be conventional the spigot can be provided on the cleat and the socket on the holder, but the opposite arrangement could be used.

Also, it is preferred that the ring of posts be provided on the cleat and the ring of teeth on the holder. Most preferably the teeth project from a cylindrical outer surface of a hub of the holder (forming the screw-threaded socket) and in use are received within the ring of posts, the hub being received into an annular well formed between the spigot and the posts.

Preferably the posts have a radially inner surface with a convex profile towards the ring of teeth, in order to smooth the passage of the teeth across surfaces of the posts between engagements of the teeth in recesses formed between the spaced posts. The circumferential ends of the surface may have different profiles to offer differing resistance to movement of the teeth past the posts on screwing and unscrewing. Preferably, the profiles are arranged to provide less resistance to screwing than unscrewing. This eases insertion, and helps to ensure that the cleat does not become unscrewed by mistake. The posts may be arranged in pairs, with each pair having a common base, or each post may be free-standing.

The screw thread of the spigot and socket may be a multi-start (most preferably three-start) thread, enabling rapid and efficient assembly of studs and holders. Most preferably the number of posts in the ring is a multiple of the number of thread starts, there being for example six, nine or twelve posts with a three-start thread.

The profile of the radially inner surface of the posts forms the subject of a further aspect of the invention.

According to a second aspect of the invention a shoe cleat has a screw-threaded spigot for rotary insertion into a socket of a holder to secure the cleat and holder together, and a ring of posts extending axially and adapted to engage with teeth of the holder, each post having a radially inner surface with a curved profile having a central convex region and first and second circumferential ends, the first and second ends having different profiles.

The differing profiles of the first and second circumferential ends means that the posts offer differing resistance to movement of the teeth past the posts on insertion and removal of the cleat from the holder.

Preferably the profiles are arranged so that the posts offer less resistance to the teeth for insertion of the cleat than they do for its removal. The circumferential end which is the leading end on insertion may have a concave profile facing the teeth, to facilitate passage of the teeth. The other circumferential end, that is, the leading end on removal, preferably has a convex profile towards the teeth, to resist unscrewing when not required.

If cleats are made out of different materials, the frictional and resilience characteristics of the posts will differ. The profiles of the circumferential ends can then be altered to

4

ensure that each cleat requires approximately the same forces to be applied for insertion and removal, whatever material it is made of.

As with the first aspect of the invention, the posts may be free-standing, or arranged in pairs, with each pair having a common base. The screw thread of the spigot is preferably a multi-start thread, most preferably a three-start thread.

There now follows a detailed description to be read with reference to the accompanying drawings, of interengageable stud and socket-forming components which in their construction and in the manner of their interco-operation illustrate all the aspects of the invention by way of example.

In the accompanying drawings:

FIG. 1 is a sectional view of a stud seen in side elevation;

FIG. 2 is a plan view of the stud seen from above;

FIG. 3 is a sectional view of a receptacle (being a socket-forming component) seen in side elevation;

FIG. 4 is a plan view of the receptacle seen from beneath; and

FIG. 5 is a view similar to FIG. 2, showing part of a further embodiment.

A shoe cleat in the form of a stud (FIGS. 1 and 2) suitable for use on a golf shoe has a disc-like flange 10. A screw-threaded spigot 12 projects from an upper side of the flange and a ground-engaging spike 14 projects from a lower side of the flange, the spigot and the spike being central on the flange. The flange and the spigot and the spike are formed by a unitary moulding of a plastics material, and the spike is formed by a metal pin which extends axially through the moulding and is secured in the moulding in the manner of a rivet.

The stud is arranged for securement in a sole or heel of a golf shoe by means of a holder in the form of a socket-forming receptacle (FIGS. 3 and 4). The receptacle comprises a hub 16 having a screw-threaded socket bore 18, the bore of the hub being closed at its upper end 20. A flange 22 surrounds the hub, the flange being formed with perforations 24. For use the receptacle is incorporated into a moulded or composite outsole (or heel) of a golf shoe so as to present its screw-threaded bore 18 for reception of the complementarily threaded spigot 12 of the stud, so to secure the stud to the shoe. The receptacle is formed as a unitary moulding of a plastics material.

Such a stud and receptacle combination, as so far described, is well known in the art.

In the invention, the complementary thread forms of the stud and receptacle are three-start threads, providing a relatively steep helix angle which enables the stud to be inserted into the receptacle with a minimum of rotation. In order to secure the stud when screwed into the receptacle, the frictional resistance to unscrewing being relatively low owing to the steepness of the thread, a locking means is used. This comprises a ring of axially extending teeth 26 which are formed around the outside of the receptacle hub 16 to become engaged with inner surfaces of a collar 28 on the stud as the hub is inserted into the collar.

As seen in FIGS. 3 and 4, the teeth 26 project radially outwards from a cylindrical outer surface 30 of the hub, the teeth being in the form of short stubby ribs which extend in a direction parallel to the axis of the hub. In cross-section the ribs have a generally triangular form but present a rounded apex. The ribs are uniformly distributed co-axially about the hub axis, there being twelve ribs provided at 30° intervals.

The stud collar 28 (FIGS. 1 and 2) extends axially from the flange 10, being approximately half the height of the threaded spigot 12 which it surrounds coaxially. An annular

US 6,810,608 B2

5

well 32 is formed between the spigot 12 and the collar 28 for reception of the receptacle hub 16. The collar 28 comprises a ring of twelve separate segments forming free-standing posts 34 which are uniformly distributed at 30° intervals about the axis of the stud, the posts being separated by narrow slits 36. Radially outer surfaces 38 of the posts make up a cylindrical outer surface of the collar. Radially inner surfaces 40 of the posts (facing towards the teeth 26 in assembly) are slightly convex in planes perpendicular to the stud axis (FIG. 2) to present an inner surface of the collar which, interrupted by the slits 36, generally undulates in a circumferential direction about the stud axis.

The distance of radial projection of the teeth 26 from the receptacle axis is substantially equal to that of the inner surfaces of the posts 34 at circumferential positions immediately adjacent to the slits 36. That is to say, other than when the receptacle teeth 26 are radially aligned with the collar slits 36 there is radial interference between the teeth and the posts which causes frictional resistance to relative rotation of the components. Rotation of the stud relative to the receptacle is, therefore, resisted in steps by engagement of the teeth 26 with successive posts 34. This is the case whether the stud is fully inserted into the receptacle or only partially inserted (provided the degree of insertion is such that the teeth and the posts are interengaged).

The teeth 26 are substantially incompressible and reliance is placed on resilient deflection of the free-standing posts 34 to ease the passage of the teeth past the posts during relative rotation of the components. The convex surface profile of the posts 34 smoothes the passage of the teeth 26 across the surfaces of the posts between engagements of the teeth in the recesses formed between the spaced posts 34. As the spigot 12 is screwed into the socket, the posts 34 are less easily deflected, and so offer increasing resistance to passage of the teeth past them (as the teeth approach the bases of the posts at the flange 10) which serves to militate against any danger of overtightening the stud into the receptacle. Upon rotation of 120° of the spigot relative to the socket, after initial interengagement of the spigot and socket threads, the stud is fully inserted into the receptacle. In this position, the teeth 26 of the receptacle are in opposition to the spaced posts 34.

The locking posts 34 on the stud physically deform outwardly as they pass over the locking teeth 26 on the receptacle and return into position when engaged into the recesses between the teeth. This physical movement is not dependent on the thread clearances and it is not affected by the thread geometry, permitting the two components of the thread assembly to be intimately coupled and thereby giving strength, resistance to stripping and easy location of the mating parts at assembly.

FIG. 5 shows a further embodiment of the collar 28 on the stud, and corresponding reference numerals have been applied to corresponding parts. Instead of the separate posts 34, in FIG. 5 posts 42 are in pairs, each pair sharing a common base 44. The radially inner surfaces 40 of each post 42 are also different. Although still generally convex towards the teeth, the circumferential ends of the surfaces are not mirror-symmetrical. Instead, each surface 40 has a central convex region 46, a first circumferential end 48 having a concave profile towards the teeth, and a second circumferential end 50 having a convex profile towards the teeth. The first end 48 is the leading end and the second end 50 is the trailing end when the stud is inserted in the holder, and vice versa when it is removed. The concave profile of the first end 48 presents less resistance to the teeth on insertion of the stud, while the convex profile of the second

6

end 50 presents greater resistance on removal. This enables the stud to be inserted relatively easily, but prevents its accidental removal.

The profiles of the ends 48, 50 may be varied to vary the torque needed for screwing and unscrewing or to allow for different frictional and resilience characteristics of different materials.

I claim:

1. A shoe cleat having a screw-threaded spigot for rotary insertion into a socket of a holder to secure said cleat and holder together, wherein said cleat has a body member and a plurality of free-standing posts projecting axially from said body member and disposed equidistant from a longitudinal axis of said body member, said posts each having a base secured to said body member and being resiliently deflectable in a generally radially outward direction from said axis during rotary insertion thereof into said socket, wherein a generally annular well is defined between said spigot and said posts, said well being sized and configured to receive a portion of said holder during said rotary insertion.

2. A shoe cleat having a screw-threaded spigot for rotary insertion into a socket of a holder to secure said cleat and holder together, wherein said cleat has a body portion and at least two free-standing posts projecting axially from said body portion and disposed equidistant from a longitudinal axis of said body portion, each post having one end formed integrally with said body portion and being resiliently deflectable in a generally radially outward direction from said axis in response to outwardly applied forces applied to said posts during rotary insertion thereof into said socket, said spigot and said posts defining an annular space therebetween for receiving a portion of said holder during said rotary insertion.

3. A shoe cleat having a screw-threaded spigot for rotary insertion into a socket of a Holder to secure said cleat and holder together, wherein said cleat has a body portion and at least one free-standing post formed integrally with said body portion and projecting axially from said body portion, said post being radially spaced from a longitudinal axis of said body portion and having a radially inner surface with at least one convex profiled adapted to engage a portion of said holder received between said spigot and said post during insertion of said spigot into said socket and said holder, said post being resiliently radially deflectable in response to radially outward forces applied thereto during said rotary insertion.

4. A shoe cleat adapted for rotary threaded insertion into a threaded socket of a cleat holder to secure the cleat and holder together, the cleat holder being of the type wherein the threaded socket is internal of a holder hub having a plurality of circumferentially spaced teeth projecting radially outward from the hub to a predetermined radial location, said cleat comprising:

a body portion;

an externally threaded spigot secured to and extending axially from said body portion and adapted to be coaxially received and threadedly engaged in the threaded socket;

at least one resiliently deflectable locking member extending when in an undeflected position generally axially from said body portion, said locking member being located in radially spaced relation to said spigot and having a proximal end secured to said body portion such said locking member is resiliently deflectable in a generally radially outward direction from said undeflected position in response to a predetermined

US 6,810,608 B2

7

force level applied to said locking member, said locking member providing resistance to rotation of said spigot relative to said hub by projecting toward said hub inwardly of said predetermined location, such that forced rotation of said spigot in the threaded socket causes successive teeth of said hub to apply force to said locking member in excess of said predetermined force level and thereby resiliently deflect said locking member generally radially outward;

wherein said locking member is sufficiently resistive to applied forces less than said predetermined force level to resist radially outward deflection and prevent inadvertent rotational movement of said teeth and hub past said locking member.

5. The shoe cleat of claim 4 wherein said cleat includes at least two of said locking members, said two locking members being angularly spaced from one another at a common radial distance from said spigot.

6. The shoe cleat of claim 4 wherein said cleat has a plurality of said locking members disposed at successive angularly spaced locations at a common radial distance from said spigot.

7. The shoe cleat of claim 5 wherein said two locking members are free-standing.

8. The shoe cleat of claim 5 wherein each of said plurality of locking members is individually and independently resiliently radially deflectable.

9. The shoe cleat of claim 8 wherein said locking members extend longitudinally from a cleat surface from which said spigot axially extends, and wherein said locking members are more resistive to radial deflection from radial forces applied thereto at locations closer to said surface than from radial forces applied thereto at more distal locations along the locking members.

10. The shoe cleat of claim 4 wherein said locking member is an elongated post that extends longitudinally from said body portion, and wherein said locking member is more resistive to radial deflection from radial forces applied thereto at locations closer to said body portion than from radial forces applied thereto at more distal locations along the locking member.

11. A shoe cleat adapted for rotary threaded insertion into a cleat holder about a threaded engagement axis, said cleat being characterized by at least a first locking member that is resiliently deflectable in a radially outward direction in response to radially outward forces above a predetermined level applied thereto during rotary insertion of said cleat relative to said holder, said locking member having a radially undeflected position in which it is resistive to forces applied thereto below said predetermined level to prevent deflection tangentially of the direction of rotation of said cleat relative to said holder.

12. The shoe cleat of claim 11 further including a second locking member substantially identical to said first locking member but spaced angularly therefrom at a common radial distance from said axis.

13. The shoe cleat of claim 12 wherein said first and second locking members are free-standing and independently radially deflectable.

8

14. A shoe cleat for rotary threaded insertion into a socket of a holder to secure said cleat and holder together, said cleat comprising:

a body member;

a screw-threaded spigot extending axially from said body member; and

a plurality of free-standing posts projection axially from said body member and disposed equidistantly spaced from a longitudinal axis of said body member, said posts each having a base secured to said body member and being resiliently deflectable in a generally radially outward direction from said axis in response to outwardly applied forces applied to said posts;

wherein a generally annular well is defined between said spigot and said posts.

15. A shoe cleat for rotary threaded insertion into a socket of a holder to secure said cleat and holder together, said cleat comprising:

a body portion;

a screw-threaded spigot extending axially from said body portion; and

at least two free-standing posts projecting axially from said body portion and disposed equidistant from a longitudinal axis of said body portion, each post having one end formed integrally with said body portion and being resiliently deflectable in a generally radially outward direction from said axis in response to outwardly applied forces applied to said posts, said spigot and said posts defining a generally annular space therebetween for receiving a portion of said holder during said rotary insertion.

16. A shoe cleat for rotary threaded insertion into a socket of a holder to secure said cleat and holder together, said cleat comprising:

a body portion having a longitudinal axis;

a screw-threaded spigot extending axially from said body portion; and

at least one free-standing post formed integrally with and projecting axially from said body portion, said post being radially spaced from said longitudinal axis and having a radially inward-facing inner surface with at least one convex profile, said post being resiliently radially deflectable in response to radially outward forces applied thereto.

17. A shoe cleat adapted for rotary threaded insertion into a cleat holder about a threaded engagement axis, said cleat being characterized by at least a first locking member that is resiliently deflectable in a radially outward direction in response to predetermined forces applied thereto, said locking member having a radially undeflected position in which it is relatively resistant to radially outward deflection in response to force applied thereto in one tangential direction and less resistant to radially outward deflection in response to force applied thereto in a second tangential direction.

* * * * *

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Trisport, Ltd.

### DEFENDANTS
Greenkeepers of Delaware, LLC and Greenkeepers, Inc.

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Maryellen Noreika, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899-1347, (302) 658-9200

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. § 271
Brief description of cause:
patent infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 7/29/08
SIGNATURE OF ATTORNEY OF RECORD: /s/ Maryellen Noreika

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.   (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.  Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.   Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.  Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.